# Exhibit A-2

ELECTRONICALLY FILED
Benton County Circuit Court
Brenda DeShields, Circuit Clerk
2021-Nov-18 13:13:52
04CV-21-2788
C19WD04 : 24 Pages

## IN THE CIRCUIT COURT OF BENTON COUNTY, ARKANSAS
## CIVIL DIVISION

**IRIS CORRALES,** an individual and
**ELAINE HOPKINS**, an individual.                                    **PLAINTIFFS**

vs.                                            04CV-21-_____

**SIMMONS PREPARED FOODS, INC.**                                **DEFENDANT**
an Arkansas Corporation.

### COMPLAINT

COMES NOW, the Plaintiffs, Iris Corrales and Elaine Hopkins, by and through their attorney, Renee S. Schuldt of Mostyn Prettyman, PLLC, and for their Complaint, states and alleges as follows:

### PARTIES, JURISDICTION, AND VENUE

1. That Plaintiff, Elaine Hopkins (hereinafter known as "Victim") is an individual who resides in Gentry, Benton County, Arkansas.

2. That Plaintiff, Iris Corrales (hereinafter known as "Sister") is an individual who resides in Siloam Springs, Benton County, Arkansas.

3. That Defendant, Simmons Prepared Foods, Inc. (hereinafter known as "Simmons"), is an Arkansas Corporation, with locations in Decatur and Siloam Springs, Benton County, Arkansas.

4. That this case involves issues and claims factual to Title VII of the Civil Rights Act, 42 U.S.C. §2000e, *et seq* ("Title VII") and the Arkansas Civil Rights Act of 1993 ("ACRA").

5. That the Court has personal jurisdiction over Defendant because Defendant is domiciled in Arkansas.

6. That a substantial amount of the events and actions giving rise to violation of Title VII and ACRA occurred in Siloam Springs, Benton County, Arkansas; therefore, subject matter jurisdiction and venue are proper.

7. That pursuant to Ark. R. Civ. P. (20), Plaintiffs assert right to relief in respect of or arising out of the same transaction, occurrence, or series of transactions or occurrences, and assert that questions of law or fact common to all Plaintiffs will arise in this action.

## FACTS

8. Plaintiffs incorporate and reallege each previous paragraph as if fully stated herein.

9. Victim was an "employee" of the Defendant as defined by 42 U.S.C. §2000e(f) and A.C.A.§ 16-123-102.

10. Sister was an "employee" of the Defendant as defined by 42 U.S.C. §2000e(f) and A.C.A.§ 16-123-102

11. Defendant was a qualified "employer" as defined by 42 U.S.C. §2000e(b) and A.C.A.§ 16-123-102(5), because Defendant employs over the respective threshold number of employees in the State of Arkansas.

12. Victim and Sister are sisters.

13. On or about October 2018, Simmons hired Victim as a "Human Resources Assistant."

14. Sister worked at Simmons periodically since 2010. In April 2015, Sister began working as a "Human Resources Assistant" in the "Pet Treats" location and was promoted to "Human Resources Coordinator" in on or about 2017; in August 2018, Sister was promoted to "Human Resources Shift Manager" at the Siloam Processing Plant; in July 2019 Sister was promoted again to "Human Resources Shift Manager" at the "SFI Feed Ingredients" location.

15. While employed by Simmons, Victim instituted two (2) formal internal complaints of sexual harassment against her supervisor, Mr. Eloy Barajas ("Barajas"), the Director of Human Resources.

16. Victim's formal complaints were made in compliance with Simmons' reporting policies and procedures.

17. Since on or about October 2019, Victim was sexually harassed by Barajas. Barajas' harassment included sexually touching Victim, intimidating Victim, threatening to terminate Victim's employment, assigning Victim to unfavorable tasks outside of her job duties, telling sexual-charged jokes to Victim, and embarrassing Victim.

18. For example, during the busy "open enrollment" season in on or about October 2019, Barajas demanded Victim accompany him on a walk outside. During the walk, Barajas threatened to ensure that Victim would "not move up in the company" or cause Victim's employment to be terminated if Victim did not cease work to entertain Barajas as he told personal stories about excessive drinking outside of work.

19. At a 2019 Simmons Christmas Dinner, Barajas rubbed and touched Victim under the table, without her consent.

20. Plaintiff states upon information and belief that Barajas was drunk at the Christmas Dinner and demanded that other Simmons employees join him in drinking intoxicants.

21. The next day, Victim informed a Human Resources Director, Mr. Clay Graham, of the unwanted conduct and her fear that a formal complaint would result in retaliation by Barajas. Thus, Victim did not formally complain about the incident until on or about October 8, 2020 ("Complaint #1"), at which time Barajas' continued harassment became intolerable.

22. When investigating Complaint #1, Simmons intentionally failed to interview eye-witnesses, who were prepared to offer unfavorable statements about Barajas. Instead, Simmons relied upon a witness favorable to Barajas, who was not present during the interactions.

23. Victim states upon information and belief that due to Simmons procedures, investigation into Victim's complaints against Barajas was handled by subordinates of Barajas.

24. Further, Victim states upon information and belief that due to Barajas position as Director of Human Resources, Barajas exercised influence over investigation into Victim's complaints against Barajas.

25. Victim's second formal complaint of sexual harassment against Barajas ("Complaint #2"), filed on November 12, 2020, was induced by Barajas making a sexual and obscene gesture at Victim when Barajas prepared to take Victim's temperature, in compliance with COVID-19 procedures.

26. Specifically, upon Victim's arrived to work on November 12, 2020 at approximately 5:30 a.m., Barajas greeted Victim as "girlfriend" and signaled to Victim that he intended to take her temperature rectally, making an obscene gesture and winking at Victim.

27. When investigating Complaint #2, Simmons relied upon an absolving statement from Mr. Shedrick Jones, who (1) was not positioned to see Barajas' face or demeanor during the gesture, (2) attempted to calm Victim by immediately claiming the gesture was "just a joke," and (3) had a complaint of sexual harassment against him, by an unrelated Simmons employee. Notably, Barajas later caused Mr. Jones to be promoted to "Human Resources Director."

28. On November 27, 2020, two weeks after filing Complaint #2, Mr. Graham carried out an "Annual Performance Review" meeting with Victim. There, Graham confirmed that Victim

performed well and provided Victim a copy of her positive performance review. A copy of Victim's Annual Performance Review is attached hereto marked Exhibit "A."

29. At the conclusion of the meeting, Graham stated that a final version of Victim's Annual Performance Review (Exhibit A) would be submitted after receiving comments and final review from Barajas.

30. Barajas retailed against Victim by altering Victim's Annual Performance Reviewto reflect negative performance. A copy of the altered performance review is attached hereto marked Exhibit "B."

31. Since making Complaint #2, Barajas retailed against Victim by (1) altering Victim's Annual Performance Review, (2) intentionally excluding Victim from meetings, (3) directing other Human Resources Personnel to refrain from talking to or interacting with Victim, and (4) causing pretextual complaints to be "lodged" against Victim.

32. On December 11, 2020, one month after Victim's Complaint, Victim was notified by Mr. Jones and Ms. Judy Bradshaw, other Simmons Human Resources Personnel, that several "complaints" were lodged against Victim. Privately, Victim was directed to find other employment and "read between the lines."

33. On December 24, 2020, Simmons deviated from typical procedure and required Victim to participate in a second annual performance review (the "Second Review"). There, Simmons presented the altered version of Victim's Annual Performance Review, reflecting negative comments from Barajas.

34. Plaintiffs state upon information and belief that the Second Review was intended to form a "paper trail," upon which Simmons relied in pretextually terminating Victim's employment.

35. On January 25, 2021, Simmons suspended Victim's employment. Three days later, Simmons terminated Victim's employment.

36. When Sister arrived at work on November 12, 2020, approximately five and a half (5.5) hours after Victim recorded Complaint #2, Simmons placed Sister on an unexplained and unforeseen three day suspension. Simmons immediately stripped Sister of her duties as a Human Resources Shift Manager and demanded she leave the worksite.

37. During the suspension conversation, Sister was told that "comments" about her were uncovered during a "Deep Dive" meeting. When pressed, Ms. Cathy Rowe and Ms. Berenice Spencer (together "Management") vaguely cited that Sister put **"too much"** information into her Human Resources Investigation reports. (Emphasis added).

38. Plaintiff states upon information and belief that said Deep Dive was conducted in 2018 while Sister was a subordinate of Barajas, at the Silom Processing Plant.

39. Plaintiff states upon information and belief that "comments" from the Deep Dive were not contained in written records readily available to Management; rather, such information would only be known by Barajas.

40. Only one week before, on November 3, 2020, Sister received positive comments from Mr. Graham while interviewing for an available Human Resources Shift Manager position at the "Decatur Plant," where both Barajas and Victim worked. Later, Sister learned that employees are not permitted to transfer locations if said employee has outstanding discipline on their record.

41. Two weeks before, on October 30, 2020, Sister participated in a standard "Individual Development Plan" (IDP) meeting with Management where the parties mutually adjusted Sister's scheduled hours, upon feedback that Simmons did not employ enjoy Human

Resources ("HR") professionals during the day-shift. Otherwise, Sister received from positive feedback from Management.

42. That while on suspension, Sister contracted Covid-19 and was unable to work on-site and in-person until November 30, 2020.

43. During the approximately 2.5 weeks that Sister was absent from the workplace, another Simmons employee was assigned to certain job duties of Sister that could only be performed on-site. These duties included taking attendance and obtaining data for payroll, quarantine, and attendance challenge logs (the "Logs").

44. On December 2, 2020, two days after Sister returned to work, Simmons terminated Sister's employment, pretextually citing that on November 30, 2020, Sister (1) missed two scheduled meetings and (2) delayed in submitting the Logs.

45. First, Management changed Sister's scheduled work hours during their October 30, 2020 meeting. The "two missed meetings" were intentionally scheduled by Management outside of Sister's new work hours.

46. Second, the Logs were delayed due to (1) the actions of another Simmons employee who failed to obtain and tender all information needed for the Logs during Sister's absence, and (2) technical difficulties with a Simmons computer.

47. Barajas, as a Director of Human Resources, had the ability to direct, influence, or control tangible employment actions of Victim and Sister, including discipline, suspension, and termination.

48. Simmons terminated Victim's employment in retaliation for Victim's participation in protected activity, in violation of Title VII and the ACRA.

49. Simmons terminated Sister's employment in retaliation for Victim's participation in protected activity, in violation of Title VII.

## COUNT I: HOSTILE WORK ENVIRONMENT
## BY SEPARATE PLAINTIFF ELAINE HOPKINS ("VICTIM")

50. Plaintiffs incorporate and reallege each previous paragraph as if fully stated herein.

51. Victim's Supervisor, Mr. Eloy Barajas, was empowered by Simmons to take tangible employment actions regarding and against Victim's employment with Simmons.

52. Victim was subject to unwelcome physical contact of a sexual nature by Barajas at Simmons' 2019 Christmas Dinner

53. Victim was subject to unwelcome jokes or other verbal comments of a sexual nature or innuendo by Barajas. For example, Barajas' December 12, 2020 sexual and obscene gestures.

54. Victim was subject to unwelcome intimidation, threats, and demands by Barajas, since on or about October 2019.

55. Victim was subject to said conduct, intimidation, touching, and actions by Barajas, because of her gender.

56. Barajas' conduct was sufficiently severe or pervasive to alter the conditions of Victim's employment and created a sexually hostile work environment.

57. Victim perceived Barajas conduct and the work environment to be abusive or hostile.

58. A reasonable woman in Victim's circumstances would consider the work environment to be abusive or hostile.

59. Victim availed herself of Simmons preventative and/or corrective measures by filing formal complaints of sexual harassment against Barajas October 8, 2020 and November 12, 2020.

60. Simmons failed to prevent and promptly correct sexual harassment in the workplace by failing to conduct thorough investigations into both of Victim's formal complaints.

61. Plaintiffs state upon information and belief that Simmons' investigation into Victim's October 8, 2020 complaint was pretextual.

62. Simmons failed to prevent and promptly correct sexual harassment in the workplace by failing to discipline Barajas for his undisputed physical touching of Victim.

63. Simmons failed to prevent and promptly correct sexual harassment in the workplace by failing to conduct thorough investigations that was free from interference by Barajas, who as the Director of Human Resources retained meaningful power of the investigations and subordinates who carried out them out.

### COUNT II: RETALIATION
### BY SEPARATE PLAINTIFF ELAINE HOPKINS ("VICTIM")

64. Plaintiffs incorporate and reallege each previous paragraph as if fully stated herein.

65. Victim engaged in the protected activity of filing two formal complaints of sexual harassment against Barajas.

66. After filing the complaints, Barajas retailed against Victim by (1) intentionally excluding Victim from daily meetings of the plant's HR personnel, (2) directing other HR personnel to refrain from talking to or interacting with Victim, and (3) causing pretextual complaints to be "lodged" against Victim.

67. Further, Barajas retaliated against Victim by altering Victim's Annual Performance Review to reflect bad performance. See Exhibits A and B.

68. Despite receiving positive performance reviews from other supervisors and managers, Simmons relied upon Barajas negative comments in terminating Victim.

69. Victim was subject to adverse employment action because she made formal complaints of sexual harassment against Barajas.

70. Simmons retaliated against Victim by placing her on suspension; then, subsequently terminating her employment.

## COUNT III: RETALIATION
## BY SEPARATE PLAINTIFF IRIS CORRALES ("SISTER")

71. Plaintiffs incorporate and reallege each previous paragraph as if fully stated herein.

72. Simmons retaliated against Victim's harassment claim by placing Sister on suspension and then terminating Sister's employment. *See generally* Thompson v. North American Stainless, LP, 562 U.S. 170 (2011).

73. Simmons's action against Sister might dissuade someone in Victim's position from taking action in the future due to a fear of retaliation by the employer. *See* Id. at 174.

74. That Sister has standing to bring this third party retaliation claim because Victim was not an accidental victim and falls within the zone of interest to be protected by the retaliation provision. *See* Id. at 177-78.

## JURY TRIAL DEMAND

75. That the Plaintiffs demand a trial by jury on all issues.

WHEREFORE, the Plaintiffs pray that this Court enter a Judgment in favor of the Plaintiffs against the Defendant for its violation of Title VII of the Civil Rights Act of 1964 and the Arkansas Civil Rights Act of 1993; for their damages compensatory and punitive damages; for their costs and attorney's fees incurred in prosecuting this claim; for an award of pre-judgment and post-judgment interest; and for such other and further relief, in law or equity, as this Court may deem appropriate and just.

**RESPECTFULLY SUBMITTED,**
**IRIS CORRALES,** *Plaintiff*
**ELAINE HOPKINS,** *Plaintiff*

By:/s/ Renee S. Schuldt_____

Renee S. Schuldt (Ark. Bar #2020249)
MOSTYN PRETTYMAN, PLLC
*Attorney for Plaintiffs*
2601 N. Walton Blvd., Ste. MP
Bentonville, Arkansas 72712
P:      855-464-4529
F:      855-397-3783
E:      *renee@arklawyers.com*

## <u>VERIFICATION</u>

STATE OF ARKANSAS )
                  )
COUNTY OF BENTON  )

_____

   We, Iris Corrales and Elaine Hopkins, hereby state on oath that we have read the above and foregoing document and that the facts and matters contained therein are true and correct to the best of my knowledge, information, and belief.

_____
**Iris Corrales**

_____
**Elaine Hopkins**

Subscribed and sworn before me, a notary public, on this ___13th___ day of November 2021.

My Commission Expires: ___Nov 21, 2026___        _____
                                                 **Notary Public**

```
TOM BENNETT
Notary Public - Arkansas
Benton County
Commission # 12699537
My Commission Expires Nov 21, 2026
```

# EXHIBIT A

Fwd: PMP Info - Elaine Hopkins

From:   Elaine Hopkins (elaine.hopkins@simfoods.com)

To:     fl_aca@yahoo.com

Date:   Thursday, January 7, 2021, 10:49 AM CST

---

---------- Forwarded message ---------
From: **Clay Graham** <clay.graham@simfoods.com>
Date: Fri, Nov 27, 2020 at 9:06 AM
Subject: Fwd: PMP Info - Elaine Hopkins
To: Elaine Hopkins <elaine.hopkins@simfoods.com>


fyi.

---------- Forwarded message ---------
From: **Clay Graham** <clay.graham@simfoods.com>
Date: Fri, Nov 27, 2020 at 9:06 AM
Subject: PMP Info - Elaine Hopkins
To: Eloy Barajas <eloy.barajas@simfoods.com>


See attached PMP information for Elaine Hopkins for 2020.

Thanks.


--

**Clay Graham**

Human Resources Mgr

Simmons Prepared Foods

O 479.736.9678   C 785.416.0711
9802 S Hwy 59 | Gentry, AR 72734 | simmonsfoods.com


--

**Clay Graham**

Human Resources Mgr

Simmons Prepared Foods

O 479.736.9678   C 785.416.0711
9802 S Hwy 59 | Gentry, AR 72734 | simmonsfoods.com


--
**Elaine Hopkins**
HR Shift Manager Days, Benton County Processing Plant

**Info for 2020 Performance Management Year End Review**
**Elaine Hopkins**

**Business Goals (weight 50%)**
Elaine Hopkins
Has been taking pre-classes for HR certification and will test at the end of the year.  No
matter the outcome of the test, this has been a learning experience for her and will prove
beneficial in her career.  Rating 3

Ensure Compliance
Very particular as it comes to data entry and follow up, especially with new hires.  Continues
to be an expert with policies, procedures and past practices.  Rating 2

HR Expectations
Follow up with operations on those employees not coming to work has been excellent.  Set
up tracking system that is now used by the entire group helping identify and administrating
attendance notifications.  Benefit enrollments have been executed as planned.  ADP entries
are timely and accurate.  Rating 2

Staffing
Assisted with interviews and selection process on night shift.  Large part of onboarding
process.  Rating 2

Team member Experience & Talent Retention
Turnover percent is above 130% for the facility.  Worked closely with People Champions and
conducted small group meetings (formal and informal) to determine if common causes
existed.  Continued to seek ways to improve retention.  Greatly involved with COVID tracking
and payments at the end of the year.  Rating 1

Team Member Safety
Well know part of the department and employees continue to seek her out to address
concerns and issues.  Safety goals not met during the year.  Rating 2

**Values (weight 50%)**
Does a nice job of putting people first as she administers policies and procedures with grace
and accountability.  Very high level of integrity.  Steps into her actions and owns them.
Needs to continue asking those curious questions in situations.  When identifies areas
needing improvement, has taken action.  Was working a Personal Development Plan at the
first of the year and, as agreed with Eloy, successfully completed in mid-May Rating 2

**Growth and Development (weight 0%)**
Is working on certification.  Rating 3

**Overall**
Different year in many ways.  Continued to be a significant member of the HR department,
especially as the department has been short staffed for well over half the year.  Rating 2

# EXHIBIT B

Simmons Value Added Achievement - Manager Review
Hopkins, Elaine

12-24-2020



| | | | |
|---|---|---|---|
| **Employee ID** | 168753 | **Name** | Hopkins, Elaine |
| **Job Title** | HR Shift Manager | **Job ID** | 20262 |
| **Job Grade** | E44 | **Supervisor** | Jones, Shedrick |

## Business Goals | Section Weight 50%

### Elaine Hopkins

My personal goal is to be able to get certified in HR. I'm not sure if that means going back to school. I hope to be able to complete this goal within the next 2 years.

**Start Date:**          **Due Date:**          **Actual End Date:**

**Progress:**          **Weight:**          **Obstacles:**
0%              0%              NONE

**Employee Comments**
I am currently enrolled in SHRM HR certification course. I will be done with the course Dec. 10 and hope to take the certification test in January.

**Manager Comments**
Elaine has completed the practical side of the SHRM certification and is now in the test phase. As of early December she is awaiting her next opportunity to take the final test to secure her certification, as her first attempt was unsuccessful. Her efforts in receiving this certification will pay off for the business unit as well as her personal development

**Manager Rating**
Consistently On Target

### Ensure Compliance

Review, understand and ensure all Company Policies are observed to maintain a consistent approach to reduce liabilities across the enterprise.

**Start Date:**          **Due Date:**          **Actual End Date:**
Jan 01, 2020          Dec 31, 2020

**Progress:**          **Weight:**          **Obstacles:**
50%              0%              NONE

**Employee Comments**

1

Simmons Value Added Achievement - Manager
Review
Hopkins, Elaine



On track with this goal.

**Manager Comments**
Elaine is improving in making sure that HR policies and procedure are carried out and adhered to in a timely manner. She will need to improve in area of conducting investigations and getting management involved. She will need to make sure she is making the right decisions by connecting with management more and not just "dropping off the investigation." In other words, her summation and final decision to keep or term need to centered around the facts as they exist and delivered to the team member along those lines.

**Manager Rating**
Inconsistent/Below Target

## HR Expectations

·     Timely Terms & LOAs
·     Zero Monthly/wkly benefit auto enrollments
·     Maintain Attendance wkly (Attendance Notifications)
·     Reach out to 2nd and 3rd day NC/NS consistently

| **Start Date:** | **Due Date:** | **Actual End Date:** |
|---|---|---|
| Jan 01, 2020 | Dec 31, 2020 | |

| **Progress:** | **Weight:** | **Obstacles:** |
|---|---|---|
| 50% | 0% | NONE |

**Employee Comments**
I continue to work on this task daily. It has become easier to keep track since i have created a daily plan for myself.

**Manager Comments**
Elaine has improved in making sure that terms and LOA absences are keyed in timely. However we need to continue to make this a greater focus for 2021 as with the entire HR team. She will need to work with the team to more closely to improve this metric as group. Attendance notifications and timely terms will need to be continued emphasis moving forward

**Manager Rating**
Inconsistent/Below Target

## Staffing

Maintain headcount/planned staffing in collaboration with business unit goals

| **Start Date:** | **Due Date:** | **Actual End Date:** |
|---|---|---|

Simmons Value Added Achievement - Manager
Review
Hopkins, Elaine



Jan 01, 2020                      Dec 31, 2020

**Progress:**                    **Weight:**                    **Obstacles:**
50%                              0%                             NONE

**Employee Comments**
I continue to work on this task daily. It has become easier to keep track since i have created a daily plan for my-
self.

**Manager Comments**
Elaine will need to work more closely with the Operations team to drive culture that supports retention.  There
were a few areas of opportunities that were presented by team members throughout 2020 that she will need to
work on to make the HR department an approachable business partner for all team members

**Manager Rating**
Inconsistent/Below Target


Team Member Experience & Talent Retention

Drive a Talent Management standardized strategy to increase retention forward by owning all onboarding and
retention initiatives and meet retention goals across the enterprise, including:
People Champion | Leadership Development | Standardized Orientation | Onboarding process (To be
standardized and launched this year) | Deep Dives | Talent Retention Top 10 initiatives | Retention Plans


**Start Date:**                  **Due Date:**                  **Actual End Date:**
Jan 01, 2020                     Dec 31, 2020

**Progress:**                    **Weight:**                    **Obstacles:**
10%                              0%                             MINOR

**Employee Comments**
I continue to focus on this task. Covid has made it a little difficult for us but we continue to work on it.

**Manager Comments**
Elaine will need to do a better job of engaging our team members to drive home team member retention.  She will
need to continue to set the standard for her direct report and be a champion for the retention initiatives plant-
wide.  I would like to see her take the lead more in this area and be the 1st one to provide positive feedback and
support.

**Manager Rating**
Inconsistent/Below Target


Team Member Safety

Simmons Value Added Achievement - Manager
Review
Hopkins, Elaine



Be the stewards of our Culture by promoting an environment in which our PUT PEOPLE FIRST value comes to life. Invest time on the floor to connect with our Team Members and drive a positive and engaging environment where everyone feels Safe and valued as a Simmons Foods Team Member. Work with all functional areas to ensure Safety goals are met across the enterprise.

| **Start Date:** | **Due Date:** | **Actual End Date:** |
|---|---|---|
| Jan 01, 2020 | Dec 31, 2020 | |
| **Progress:** | **Weight:** | **Obstacles:** |
| 50% | 0% | NONE |

**Employee Comments**

I feel that in the past 6 months i have come a long way with this task. I continue to put people first using grace and accountability.

**Manager Comments**

Elaine does a good job working with operations to foster a safe working environment  She still needs to focus on those areas brought out in her development plan and increase her efforts to engage team members in a friendly and helpful way.  There has been considerable effort on her part to continue her progress in this area.

**Manager Rating**

Consistently On Target

## Business Goals

**Employee Comments**

**Manager Comments**

**Manager Rating**

Inconsistent/Below Target

## Values | Section Weight 50%

PROFESSIONAL

Simmons Values

4

Simmons Value Added Achievement - Manager Review
Hopkins, Elaine



- Put People First
- Act With Integrity
- Take Responsibility
- Be Curious
- Take Action

**Employee Comments**
I love the Simmons values. I feel that these values are used on a daily basis in our office.

**Manager Comments**
Understanding the needs of our team member and putting them first is still a struggle for Elaine and meeting those needs with an empathetic and compassionate way is an area of opportunity for  her.  She will need to continue to work towards reinventing herself in the view of team members, while positioning herself for other growth opportunities.

**Manager Rating**
Inconsistent/Below Target

## Values

**Employee Comments**

**Manager Comments**

**Manager Rating**
Inconsistent/Below Target

# Growth and Development

## Growth and Development

**Employee Comments**

**Manager Comments**

**Manager Rating**

5

Simmons Value Added Achievement - Manager
Review
Hopkins, Elaine



Consistently On Target

---

## Manager Questions

### Employee Questions and Answers

**Question**

Highlight your top accomplishment of this year. What achievement had the most impact?

**Answer**

SHRM HR Certification course.

**Question**

Please identify one or two areas you would like to develop in the coming year. Where do you want to personally grow to add greater value and impact for Simmons?

**Answer**

Investigations are an area i'd like to develop in the coming year.

### Manager Questions and Answers

**Question**

Summarize the contributions and value added to Simmons by the Team Member this year.

**Answer**

Elaine has provided a steady hand on day shift, helping the team to reach some of our retention goals and initiatives through the Covid19 crisis as well as, gaps in the HR talent here at the Benton County facility. She is driven by nature and has help us to maintain our processes. Her efforts have not gone unnoticed.

**Question**

Identify one or two areas of growth and development. Think of the aspirations of the Team Member and the current/future business needs of Simmons.

**Answer**

Elaine will need to work on the intangible area of people skill development to improve her professional and personal relationships throughout the facility. Also, she will need to work on being perceived as "approachable" by team members on all levels.

## SVA Achievement Overall

6

Simmons Value Added Achievement - Manager Review
Hopkins, Elaine



**Employee Comments**
Continue to work every day to achieve all the goals that I have set for myself to become a better version of myself.

**Manager Comments**

**Manager Rating**
Inconsistent/Below Target

Simmons Value Added Achievement - Manager
Review
Hopkins, Elaine



## Employee Signoff

I have read and reviewed this evaluation. My electronic signature does not imply agreement or disagreement.

**Employee Comments**

**Signed By**                    **Shedrick Jones** *on behalf of* **Elaine Hopkins**

**Date**                         Dec 24, 2020

## Manager Signoff

I have read and reviewed this evaluation. My electronic signature does not imply agreement or disagreement.

**Manager Comments**

**Signed By**                    Shedrick Jones

**Date**                         Dec 24, 2020

8